Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2021 08:08 AM CST

Amber J. Wood, appellant, v.
Kenneth A. Bass, appellee.

___ N.W.2d ___

Filed November 16, 2021.    No. A-21-145.

1.  **Courts: Appeal and Error.** The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.
2.  **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3.  **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
4.  **Issue Preclusion: Appeal and Error.** The applicability of issue preclusion is a question of law on which an appellate court reaches a conclusion independent of the court below.
5.  **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
6.  **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
7.  **Trial: Parties: Pleadings.** Ordinarily, a party may at any time invoke the language of his or her opponent's pleadings on an issue being tried as rendering certain facts indisputable.
8.  **Pleadings: Waiver.** The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions but judicial admissions and, as such, are a waiver of all controversy insofar as the opponent may desire to take advantage of them.

9. **Pleadings.** Matters contained in pleadings in other cases are simple admissions.
10. **Evidence.** A simple admission is one that is admissible as evidence of the facts alleged therein and may be introduced and considered the same as any other evidence.
11. **Issue Preclusion.** Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.
12. **Judgments: Issue Preclusion.** Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.
13. **Issue Preclusion.** Issue preclusion applies only to issues actually litigated.

Appeal from the District Court for Sarpy County, George A. Thompson, Judge, on appeal thereto from the County Court for Sarpy County, Todd J. Hutton, Judge. Judgment of District Court affirmed.

Michael F. Polk, of Watke, Polk & Sena, L.L.P., for appellant.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Amber J. Wood appeals from a decision of the district court for Sarpy County which affirmed the county court's determination that Wood was not entitled to relief pursuant to her action brought under the Disposition of Personal Property Landlord and Tenant Act (Act), Neb. Rev. Stat. §§ 69-2301 to 69-2314 (Reissue 2018 & Cum. Supp. 2020). The county court dismissed the case, finding that Wood did not establish that she and Kenneth A. Bass had formed a landlord-tenant

relationship. As a result, she was not entitled to relief under the Act. The district court affirmed. Upon appeal to this court, Wood argues that the lower courts erred in determining that a landlord-tenant relationship did not exist between the parties. For the reasons set forth below, we affirm.

BACKGROUND

Wood and Bass met in 2013 and became involved in an "arranged" and, at times, romantic relationship. In 2016, Bass invited Wood and her daughter to move into his residence with him. The parties' relationship soured thereafter and ended early in 2017. Bass left the residence temporarily and sought to remove Wood from the residence. On March 29, Bass provided Wood with a "30 Day Notice to Terminate Lease," requesting Wood to vacate the residence by May 1. On June 14, Bass initiated eviction proceedings by filing a complaint for restitution. In October, Wood vacated the residence involuntarily, but left a significant amount of her personal property inside. Bass did not initially grant Wood access to the residence in order for her to retrieve her property. Property belonging to Wood was placed in the garage by Bass and representatives of Wood were then allowed to remove it. However, once she was able to see her property, Wood noticed that some items were damaged and other items she believed to be hers were missing.

On October 12, 2017, Wood filed a complaint pursuant to the Act requesting damages equal to the value of the unreturned personal property, which she asserted was approximately $110,202. Attached to her complaint was a list of the property that she alleged was still in Bass' possession, including multiple beds, televisions, area rugs, furniture, and other items which remained in Bass' residence. Bass filed an answer denying the allegations and filed a counterclaim alleging that Wood was wrongfully withholding Bass' personal property and requesting that Wood return any of his personal property in her possession. Trial was ultimately held on June 29, 2020, wherein both Wood and Bass testified.

Wood described her relationship with Bass. She explained that she and Bass had an "arranged" relationship, wherein she would be a companion to Bass for trips and other events. In exchange, Bass would purchase gifts for her. She also explained that she and Bass engaged in physical intimacy and professed that they loved each other. In 2016, Bass approached Wood about moving into his residence.

Wood testified as to her understanding of the agreement that persuaded her to move into Bass' residence. Wood explained that when Bass approached her about moving into his residence in 2016, they had not been speaking to each other. According to Wood, she and Bass reached an agreement wherein she and her daughter would live in Bass' house until Wood's daughter graduated from high school, even if their relationship ended. She further explained that to live there, she agreed to be involved with Bass exclusively, to continue to be his companion for events and trips, and to fulfill various household duties. She conceded that she did not sign a lease prior to moving in.

Bass also testified regarding the arrangement he reached with Wood to live in his residence. Bass explained that he asked Wood to live with him in an effort to reconcile their relationship because he considered himself to be in love with Wood. He did not have an expectation that Wood would pay money for rent nor did he have her sign a lease. He testified that Wood never paid any money for rent. He noted that while Wood lived at the residence, he continued to live there and did not feel like he was excluded from the residence. When their romantic relationship ended in 2017, he attempted to remove her from his residence. He consulted a lawyer about the quickest way to remove Wood. He was advised that the quickest way was to give her a 30-day notice to terminate the lease and to file a complaint for restitution of the premises. However, Bass explained that when he signed the 30-day notice to terminate the lease, he did not believe that he was Wood's landlord.

Wood testified that prior to Bass' efforts to remove her, Bass had left the residence. She received the 30-day notice to

terminate the lease in March 2017. The 30-day notice to terminate the lease stated the following:

> Pursuant to Neb. Rev. Stat. § 76-1437(2), you are hereby notified that effective May 1, 2017, your landlord, . . . Bass is terminating the month to month tenancy regarding the residence . . . . As a result, you are required to vacate and surrender possession of the premises. If you fail to do so, legal proceedings will be instituted against you to recover possession of the premises, to recover damages, and to recover attorney fees.
> **YOU MUST VACATE THE RENTAL PREMISES BY NO LATER THAN MAY 1, 2017**[.]

However, Wood did not leave the residence by May 1, 2017, because, as she testified at trial, she believed that she had an agreement to live in the house even if the relationship failed. Bass then filed a complaint for restitution in June 2017, in which he attached the 30-day notice to terminate the lease. His complaint for restitution stated that "[p]ursuant to a prior agreement, [Wood] is residing at [Bass'] residence" and prayed for relief including possession of the premises. Although our record contains multiple motions to continue and orders with respect to the motions to continue, our record does not reflect if there was ever a restitution hearing or a judgment entered which granted possession of the residence to Bass. Wood testified that she could not remember if there was a hearing regarding restitution in the eviction proceedings because there had been so many delays. Nevertheless, Wood testified that the police removed her daughter from the residence in October 2017 and that Wood was also barred from the residence. After leaving the residence, she continued to have discussions with Bass regarding possible arrangements if she wanted to stay in the house. When she was barred from the residence, she left a significant amount of property behind. Wood testified that Bass would not, initially, let her back into the residence to retrieve her personal property. She emailed Bass a list of property items that she wanted to retrieve. Although at trial Wood

could not remember the date, she testified she was eventually allowed to retrieve the property Bass had placed in the garage. Wood's uncle testified that he was allowed to go into the house and retrieve some items belonging to Wood's daughter.

When Wood arrived at the residence, she observed that much of her property had been relocated to the garage. Upon opening the garage door, she observed that her property was in boxes and storage tubs that were stacked on top of each other. In addition, she observed damage to some of the items of property, including to some of her furniture. She created a list of property that was missing from the garage or that was damaged, which list was received into evidence. According to this list, she was missing numerous items of furniture, electronics, jewelry, and other items.

Bass testified that all of Wood's property was removed from the house and placed in the garage on October 20, 2017. At that point, the property was made available to Wood. He testified that there was never an expectation Wood would pay rent and that no lease existed. He was never precluded from entering the residence, but did seek to remove Wood once the relationship ended. While he agreed that he signed documents identifying himself as "landlord," he never believed that the nature of their relationship was that of a landlord and tenant. He testified that he signed the documents on the advice of former counsel.

The county court determined that, in order for Wood to recover under §§ 69-2311 and 69-2312 of the Act, there must be a landlord-tenant relationship, which Wood failed to prove. The county court relied on *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984), in determining that the parties did not impliedly create a landlord-tenant relationship, but instead lived together pursuant to a mutual agreement to live informally with each other as long as their interests remained similar. The county court dismissed Wood's complaint to recover damages and dismissed Bass' counterclaim requesting his personal property.

Wood appealed to the district court alleging that the county court erred in dismissing Wood's complaint. Specifically, Wood alleged that the county court erred in failing to find Wood and Bass were in a landlord-tenant relationship. Wood argued that Bass was precluded from asserting that there was no landlord-tenant relationship because he judicially admitted that he was the landlord in the course of the eviction proceedings. Wood also argued that the eviction proceedings conclusively established that Bass was a landlord and Wood was a tenant; thus, Bass was estopped, as a matter of law, from relitigating the tenancy issues between the parties.

The district court affirmed the decision of the county court finding that Wood and Bass did not have a landlord-tenant relationship. First, the district court found that Wood failed to demonstrate the existence of a rental agreement, that the premises were occupied for rent, and that the premises were occupied by Wood to the exclusion of others. The district court also found that while an express agreement to create a landlord-tenant relationship is not necessary to form a landlord-tenant relationship, the evidence must indicate that the parties intended to impliedly create such an arrangement, which Wood failed to do. The district court further found that the prior eviction proceedings were not dispositive in determining that a landlord-tenant relationship was formed. In addition, the district court noted that Wood's collateral estoppel argument failed because there was not a final judgment of the eviction proceedings in the record. The district court concluded that the county court's decision was supported by competent evidence and was neither arbitrary, capricious, nor unreasonable.

Wood now appeals to this court.

## ASSIGNMENTS OF ERROR

Wood assigns and argues that the lower courts erred in determining that no landlord-tenant relationship formed between Wood and Bass and in failing to find that Bass was precluded from relitigating and denying that a landlord-tenant relationship existed.

## STANDARD OF REVIEW

[1,2] The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. *Schaefer Shapiro v. Ball*, 305 Neb. 669, 941 N.W.2d 755 (2020). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *Egan v. County of Lancaster*, 308 Neb. 48, 952 N.W.2d 664 (2020).

[4] The applicability of issue preclusion is a question of law on which an appellate court reaches a conclusion independent of the court below. *Jordan v. LSF8 Master Participation Trust*, 300 Neb. 523, 915 N.W.2d 399 (2018).

## ANALYSIS

Wood's complaint requested damages for the lost and damaged property pursuant to the Act. Section 69-2311 of the Act requires a residential landlord to surrender to a residential tenant any personal property not owned by the landlord that has been left on the premises after the tenant has vacated the residential premises and the tenant has requested the return of the property. Accordingly, Wood must show that Bass was a landlord and Wood was a tenant for her to receive the statutory relief she requested under the Act.

*Language of Act.*

[5,6] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021). In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Id.*

Under the Act, the definition of "[l]andlord" includes an owner of furnished premises for rent. See § 69-2302(1). The definition of "[t]enant" includes a person entitled under a rental agreement to occupy any premises for rent to the exclusion of others when such premises are used as a dwelling. See § 69-2302(6). The term "rent" is not defined under the Act; however, Nebraska appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning. See *McEwen v. Nebraska State College Sys.*, 27 Neb. App. 896, 936 N.W.2d 786 (2019). Merriam-Webster's Collegiate Dictionary 1054 (11th ed. 2020) defines "rent" as usually a "fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof"; especially, "an agreed sum paid at fixed intervals by a tenant to the landlord."

Thus, we are tasked with determining whether Wood is a tenant and Bass is a landlord based on the foregoing definitions. To show that Wood is a tenant, she would need to show she is entitled under a rental agreement to occupy Bass' house for rent to the exclusion of others. We note that Wood failed to produce any written rental agreement or lease. Bass testified that Wood did not sign a lease. Wood testified that she and Bass had an oral agreement that she could live in the residence with her daughter. In exchange, Wood would do various household duties, be a companion to Bass, and be with Bass exclusively. Wood admitted that she never paid any money to Bass to live there. Moreover, we note, as we did above, that Wood did not have exclusive use of the residence. Only after the romantic relationship ended between the parties did Bass attempt to remove Wood from the residence. Accordingly, we find that Wood failed to establish that she was a tenant and Bass was a landlord under the statutory definitions found in the Act.

*Implied Landlord-Tenant Relationship.*

We also find, as did the county court and district court, that a landlord-tenant relationship between Wood and Bass cannot be implied from the facts of this case. In *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984), the Nebraska Supreme

Court was tasked with determining whether a landlord-tenant relationship was formed when one of the appellants allowed his brother to live in the appellants' house without an express contractual agreement. The Supreme Court explained that while the status of landlord and tenant generally arises from contract, an express agreement to create a landlord-tenant relationship is not necessary. See *id.* Rather, the evidence must indicate that the parties intended to impliedly create such an arrangement, including that the tenant acquired certain rights and the landlord assumed certain obligations. See *id.* The Supreme Court, citing *Friend v. Gem International, Inc.*, 476 S.W.2d 134 (Mo. App. 1971), noted that the essentials of the landlord-tenant relationship are (1) a reversion in the landlord; (2) the creation of an estate in the tenant, either at will or for a term less than that for which the landlord holds; (3) the transfer of exclusive possession and control of the premises to the tenant; and (4) a contract, either express or implied between the parties. *Reeder v. Reeder, supra.* The Supreme Court ultimately concluded that no implied landlord-tenant relationship could be implied based on the facts of that case. See *id*.

Here, both the county court and the district court determined that the parties did not impliedly create a landlord-tenant relationship. We agree with their conclusion. Although Bass invited Wood to live with him, he did so in an effort to reconcile their relationship. He did not ask Wood to sign a lease nor did he ask her to pay rent. Bass only sought to have Wood removed from the residence after their romantic relationship ended. While according to Wood, Bass may have left the residence on a temporary and voluntary basis when their relationship faltered, there is no evidence that he was excluded therefrom. Thus, there was not a transfer of exclusive possession and control of the premises. Rather, the evidence supports that Wood and Bass lived with each other and when the relationship ended, Bass sought to reassert his exclusive ownership interest in the premises. Accordingly, the county court's determination conforms to the law and was supported by competent evidence adduced at trial.

*Admissions Made by Bass.*

Notwithstanding her other arguments as to the establishment of a landlord-tenant relationship, Wood argues that in the prior eviction proceedings, Bass judicially admitted that he was Wood's landlord and that the parties had a prior agreement which allowed Wood to live in the residence owned by Bass. Based on these purported admissions by Bass in the eviction proceedings, Wood argues that the issues of whether a prior agreement existed between the parties and that Bass was Wood's landlord have been established and are now indisputable.

[7-10] It is true that ordinarily, a party may at any time invoke the language of his or her opponent's pleadings on an issue being tried as rendering certain facts indisputable. *Miller v. Radtke*, 230 Neb. 561, 432 N.W.2d 542 (1988). The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions but judicial admissions and, as such, are a waiver of all controversy insofar as the opponent may desire to take advantage of them. *Knoell Constr. Co., Inc. v. Hanson*, 205 Neb. 305, 287 N.W.2d 435 (1980). However, judicial admissions must occur within judicial proceedings and within the case being tried. *State v. Burke*, 23 Neb. App. 750, 876 N.W.2d 922 (2016). Matters contained in pleadings in other cases are simple admissions. *Cook v. Beermann*, 202 Neb. 447, 276 N.W.2d 84 (1979). A simple admission is one that is admissible as evidence of the facts alleged therein and may be introduced and considered the same as any other evidence. See *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020). Accordingly, a simple admission should be given such weight as the trier of fact deems it entitled in the light of the pleader's explanation, if any, of the circumstances under which the admissions were made. *Id.*

In the present case, the admissions from Bass that he was a landlord and that there was a prior agreement were made in a separate eviction proceeding. Consequently, these admissions are simple admissions. The county court had the opportunity to consider these simple admissions and weigh the admissions appropriately in light of the explanations given in court.

Bass testified that at the time that he filed his complaint for restitution, he did not believe himself to be in a landlord-tenant relationship with Wood. Instead, he testified that he relied on the advice of legal counsel as to how to most quickly remove Wood from his residence. He also testified that there was not a signed lease and that Wood did not pay any money to him while she lived there. He further explained that the purpose of Wood's moving into the residence was to reconcile the relationship because he was in love with Wood. In contrast to Bass' explanation for Wood's moving in with him, Wood testified that the parties had an arrangement where in exchange for her living in Bass' residence, Wood would maintain an exclusive relationship with Bass, would continue to attend events with him, and would complete various household duties. She further testified that Bass promised her that even if the relationship became irreparable, she would not have to leave until after her daughter graduated from high school.

The county court heard the testimony of both Bass and Wood and made a determination as to how much weight to give the admissions made by Bass in the eviction pleadings. Given the county court's determination, it apparently believed that the greater weight of the testimony presented at trial, including Bass' explanation of how the eviction proceedings came about, overcame any of Bass' admissions made therein. The county court clearly considered the testimony of both parties that demonstrated that Bass did not require Wood to sign a lease or pay money for rent. The court also considered Bass' testimony that he merely sought to remove Wood from the residence in the quickest manner available when their relationship ended. Appellate courts do not reweigh the testimony or reevaluate the credibility of witnesses on appeal. See *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020). Accordingly, we agree with the district court that the county court did not err in finding that the prior admissions made in the eviction action were not judicial admissions that were dispositive of determining whether a landlord-tenant relationship was formed between the parties.

*Issue Preclusion.*

Wood further argues that Bass is precluded as a matter of law, through issue preclusion, from relitigating the landlord-tenant relationship between the parties because Bass' eviction proceedings against Wood definitively determined any tenancy issues with respect to the parties.

[11-13] Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* Issue preclusion applies only to issues actually litigated. *Id.*

In *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 343 N.W.2d 903 (1984), the Supreme Court addressed whether issue preclusion would apply in a case where the final judgment was not offered by the party seeking to invoke issue preclusion. The appellant alleged that the civil action enjoining him from operating or participating in the operation of a private school for children without complying with the school laws of Nebraska was barred because of his acquittal in a previous criminal prosecution. See *id.* The appellant placed into evidence a record of the testimony offered in the prosecution but did not offer any evidence of either the charge filed or the exact judgment rendered. *Id.* The Supreme Court stated that the analysis which needs to be made in resolving whether collateral estoppel, or issue preclusion, applies requires a study of the operative pleadings and judgment, as well as the evidence adduced in a prior proceeding. *Id.* The court noted that since it did not have the operative pleadings and judgment, there was a defect in the proof of the prior litigation that prevented it from performing the required analysis. The court went on to conclude, however, that it was well established that an

acquittal or dismissal in a prior criminal prosecution is no bar to the prosecution of a later civil action. *Id.* Therefore, even if the appellant had provided an adequate record, the State would not have been precluded from bringing the civil action.

Here, Wood has failed to provide an adequate record from which a determination of issue preclusion could be made. The record supplied from the eviction proceeding contains only the complaint for restitution, a general denial, and several motions and orders for continuance. The record does not contain either the final judgment in the eviction proceeding, the evidence adduced in the hearing, or any indication of whether a hearing was conducted. Wood did testify that her daughter was removed from the residence and that Wood, herself, was subsequently barred from the residence as well. However, she also testified that she does not recall whether a hearing with respect to the eviction proceeding occurred. Ultimately, because the final judgment and any evidence adduced during a hearing in that proceeding was not produced, neither the county court nor any reviewing court is able to perform the analysis necessary to determine whether issue preclusion can apply. Based on the record before us, we cannot say that Wood met her burden of proof that issue preclusion would apply in the present case. See *State v. Gerdes*, 233 Neb. 528, 446 N.W.2d 224 (1989) (establishing that burden of proof for application of issue preclusion is upon litigant who seeks to rely upon doctrine of issue preclusion). Therefore, we find no error by the county court or the district court.

## CONCLUSION

We find, as did the district court, that the county court did not err in determining that the parties were not in a landlord-tenant relationship. Because Wood's complaint was brought pursuant to the Act, which only applies to litigants in a landlord-tenant relationship, we likewise affirm the decision of the district court finding that the county court did not err in dismissing Wood's petition.

AFFIRMED.