Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/24/2023 09:06 AM CST

County of Lancaster, Nebraska,
appellee, v. County of Custer,
Nebraska, appellant.

___ N.W.2d ___

Filed February 24, 2023.    No. S-22-269.

1. **Rules of the Supreme Court: Appeal and Error.** Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. Any party who fails to properly identify and present its claim does so at its own peril.

2. ____: ____. Depending on the particulars of each case, failure to comply with the mandates of Neb. Ct. R. App. P. § 2-109(D) (rev. 2022) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.

3. **Appeal and Error.** Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error.

4. ____. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

5. **Jurisdiction: Statutes.** Subject matter jurisdiction and statutory interpretation present questions of law.

6. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

7. **Jurisdiction: Appeal and Error.** It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

8. ____: ____. If the court from which an appeal was taken lacked jurisdiction, then the appellate court acquires no jurisdiction.

9. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to

interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

10. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

11. \_\_\_\_. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.

12. \_\_\_\_. To the extent conflict exists between two statutes, the specific statute controls over the general.

13. **Jurisdiction: Counties: Contracts.** Compliance with Neb. Rev. Stat. § 23-135 (Reissue 2022) is mandatory, and the county board has exclusive original jurisdiction, in cases against the county involving claims arising out of contract and containing quasi-judicial questions of fact.

14. **Contracts: Intent: Words and Phrases.** The term "implied contract" refers to that class of obligations that arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words.

15. **Restitution: Unjust Enrichment.** An "implied-in-law contract," also known as a "quasi-contract," is not a contract.

16. **Claims: Restitution: Unjust Enrichment.** Quasi-contract claims are restitution claims to prevent unjust enrichment.

17. **Restitution: Unjust Enrichment.** Quasi-contractual obligations do not arise from an agreement; instead, the law imposes them when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense.

18. **Counties: Statutes: Liability.** The liability of one county to another for the support of a poor person is purely statutory.

19. **Contracts: Statutes: Legislature: Intent: Presumptions.** Although a statute can be the source of a contractual right, a contract will be found to exist only if the statutory language evinces a clear and unmistakable indication that the Legislature intends to bind itself contractually. The general rule is that rights conferred by statute are presumed not to be contractual.

20. **Counties: Statutes.** By statute, a county has a mandatory duty to provide for poor persons whether or not they are residents of the county.

21. **Counties: Statutes: Liability.** The right to enforce the liability of one county to another county for expenses paid by the former in caring for a poor person whose residence is in the latter county requires compliance with statutory terms and conditions.

22. **Statutes: Liability.** When a statute gives a right and creates a liability which did not exist at common law, and at the same time points out

a specific method by which the right can be asserted and the liability ascertained, that method must be strictly pursued.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Steven R. Bowers, Custer County Attorney, for appellant.

Eric Synowicki, Deputy Lancaster County Attorney, and Daniel James Zieg for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ., and Polk, District Judge.

Cassel, J.

# I. INTRODUCTION

Upon moving to a different county in Nebraska, an indigent individual applied for general assistance. That county furnished assistance and requested reimbursement from the county where the individual formerly lived. After denial of the request, the furnishing county sued and obtained a summary judgment. The other county appealed but failed to properly assign error. Because we conclude that compliance with the county claims statute[1] is not mandatory and jurisdictional when seeking reimbursement under the general assistance statutes,[2] the district court possessed subject matter jurisdiction. Having elected to review for plain error and finding none, we affirm the district court's grant of summary judgment.

# II. BACKGROUND

## 1. General Assistance Programs

The county board of each county is "the overseer of the poor."[3] Each Nebraska county has general assistance programs to provide benefits to indigent persons who are not eligible

---

[1] Neb. Rev. Stat. § 23-135 (Reissue 2022).

[2] Neb. Rev. Stat. §§ 68-104 to 68-158 (Reissue 2018).

[3] § 68-132.

for other state and federal assistance programs.[4] If a "poor person"—the statutory terminology—meets the requirements contained in § 68-131 and is eligible under the county's general assistance guidelines, the county board has a duty to provide general assistance.[5]

The general assistance shall come out of the treasury of the county in which the poor person has legal settlement at the time of applying for such assistance.[6] A person "who has resided one year continuously in any county, shall be deemed to have a legal settlement in such county."[7]

A county may be required to provide for a poor person even if he or she does not have legal settlement in that county.[8] "[W]henever any poor person not having a legal settlement in the county is found in distress, without friends or money, so that he or she is likely to suffer, it shall be the duty of the county board to furnish such temporary assistance . . . as it shall deem necessary."[9] Upon the poor person's application for relief, if the county board is unable to ascertain the person's last place of legal residence, "the county board shall proceed in its discretion to provide for such poor person in the same manner as other poor persons are directed to be provided for."[10] A different statute similarly provides that if a person applies for aid in a county in which he or she has not established a legal settlement, the person "shall be duly taken care of by the proper authority of the county where he or she may be found."[11]

---

[4] See *Salts v. Lancaster Cty.*, 269 Neb. 948, 697 N.W.2d 289 (2005).

[5] See § 68-132.

[6] See § 68-131.

[7] § 68-115(1).

[8] See §§ 68-114, 68-144, and 68-146.

[9] § 68-114.

[10] *Id.*

[11] § 68-144.

The Legislature required each county to adopt written standards of eligibility and assistance for the county's general assistance program.[12] The County of Lancaster (Lancaster County) did so. Pursuant to its guidelines, Lancaster County entered into a "Professional Services Agreement" with a health care provider to provide general assistance to approved applicants.

### 2. Application for
### General Assistance

On May 2, 2019, Michael Taul signed and submitted a "Lancaster County General Assistance Application." Taul's application listed an address in Lincoln, Lancaster County, Nebraska, which the application showed to be his daughter's address. But it also stated that he lived in Broken Bow, Nebraska, for 10 years, from "06/09" to "05/19." Broken Bow is located in the County of Custer (Custer County). Taul listed medical problems, stated that he was physically incapable of working, and asserted that he could not afford to pay his bills or to see a doctor. An eligibility worker approved Taul's application.

### 3. Assistance

Lancaster County provided general assistance services for Taul. The total amount provided from May 6 to November 11, 2019, amounted to $31,422.08. Taul became ineligible to receive further general assistance upon being approved for and receipt of Supplemental Security Income.

### 4. Request for Removal
### and Reimbursement

On July 11, 2019, the Lancaster County clerk sent a letter to the Custer County clerk concerning Taul. The letter stated that documentation showed Taul's legal settlement was in Custer County. It further stated:

---

[12] See § 68-133.

Pursuant to Neb. Rev. Stat. §[]68-144, this letter shall serve as official notice to Custer County . . . that . . . Taul has become chargeable as a poor person in a county, which he or she has not established a legal settlement as [sic] the time of applying for aid. Lancaster County . . . is requesting the authorities of Custer County . . . to promptly remove . . . Taul from Lancaster County . . . and to pay the expense accrued by Lancaster County . . . in taking care of . . . Taul. Any assistance provided by Lancaster County . . . to . . . Taul will be billed to Custer County . . . for reimbursement.

The Custer County Attorney acknowledged receipt of the letter. He requested that the Lancaster County clerk provide documentation "required to make the determination for [Taul's] application." The Lancaster County clerk responded via letter and provided additional information.

A year later, the Lancaster County clerk sent a request for reimbursement to the Custer County clerk. It included an itemization of expenses paid on Taul's behalf and requested $27,179.11. On October 13, 2020, the Custer County clerk provided written notice to the Lancaster County clerk that the Custer County Board of Supervisors "disallowed your claim."

The Lancaster County clerk subsequently sent a formal "Demand for Reimbursement" to the Custer County clerk. By letter dated November 25, 2020, the Custer County Attorney informed Lancaster County that the Custer County Board of Supervisors denied the claim under § 23-135, the county claims statute. The Lancaster County Attorney responded, asserting that general assistance claims under § 68-144 are not subject to the provisions of § 23-135 because the expenses arise by statute and not by contract.

### 5. COMPLAINT AND ANSWER

In April 2021, Lancaster County sued Custer County in the district court for Lancaster County. The complaint alleged

that Custer County, as Taul's county of legal settlement at the time he was provided general assistance by Lancaster County, had a statutory duty to pay the costs of the general assistance provided to Taul. Lancaster County alleged that under § 68-145, it may sue Custer County for the general assistance amounts expended on behalf of Taul. Lancaster County sought judgment against Custer County in the amount of $26,928.31.

In Custer County's responsive pleading, it set forth several affirmative defenses. One claimed that Lancaster County failed to follow § 23-135 to seek a remedy as provided by statute. Another alleged that the proper forum was in Custer County.

### 6. Summary Judgment

Lancaster County moved for summary judgment. Following a hearing, the court entered an order sustaining the motion. The court determined that it had subject matter jurisdiction over the action, reasoning that the claim submission and appeal procedures in § 23-135 did not apply to Lancaster County's claim for reimbursement. The court stated that Custer County failed to meet its burden of producing admissible contradictory evidence showing the existence of a material issue of fact regarding compliance with the general assistance statutes, the approval and adoption of the general assistance guidelines, or compliance with those guidelines.

Custer County filed a timely appeal, and we moved the case to our docket.[13]

## III. ASSIGNMENT OF ERROR

Custer County's brief contains no section for assignments of error. It does not comply with our appellate court rules.

Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2022) requires an appellant's brief to include, under the appropriate heading, "[a] separate, concise statement of each error a party contends was made by the trial court, together with the issues

---

[13] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

pertaining to the assignments of error." The rule specifies that "[e]ach assignment of error shall be separately numbered and paragraphed."[14] The rule cautions that "[c]onsideration of the case will be limited to errors assigned and discussed in the brief," but that "[t]he court may, at its option, notice a plain error not assigned."[15]

[1,2] Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court.[16] Any party who fails to properly identify and present its claim does so at its own peril.[17] Depending on the particulars of each case, failure to comply with the mandates of § 2-109(D) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.[18]

Custer County's brief contains headings in the argument section which allege error by the trial court, but argument headings are insufficient. We have consistently rejected headings in the argument section as a sufficient substitute for assignments of error contained in the proper place and properly designated.[19]

[3] Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error.[20] We will review for plain error.

---

[14] § 2-109(D)(1)(e).

[15] *Id.*

[16] See *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021), *disapproved on other grounds, Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

## IV. STANDARD OF REVIEW

[4] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[21]

[5,6] Subject matter jurisdiction and statutory interpretation present questions of law.[22] An appellate court independently reviews questions of law decided by a lower court.[23]

## V. ANALYSIS

### 1. Jurisdiction

#### (a) Appellate Court Duty

[7,8] It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[24] If the court from which an appeal was taken lacked jurisdiction, then the appellate court acquires no jurisdiction.[25] Because of that duty, we consider Custer County's argument related to jurisdiction, even though our review is otherwise limited to a search for plain error.

#### (b) Parties' Jurisdictional Paths

The parties disagree on whether the district court had subject matter jurisdiction. They offer different jurisdictional paths.

#### (i) Lancaster County: § 68-145

Lancaster County relies on the general assistance statutes. It highlights the language of § 68-145 stating that "the county taking charge of such individual may sue for, and recover

---

[21] *REO Enters. v. Village of Dorchester*, 312 Neb. 792, 981 N.W.2d 254 (2022).

[22] *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 979 N.W.2d 772 (2022).

[23] *Id.*

[24] *In re Estate of Scaletta*, 312 Neb. 953, 981 N.W.2d 568 (2022).

[25] *Tyrrell v. Frakes*, 309 Neb. 85, 958 N.W.2d 673 (2021).

from the county to which such individual belongs, the amount expended for and in behalf of such poor person and in taking care of such person."

### (ii) Custer County: § 23-135

Custer County contends that Lancaster County had to follow the procedure in § 23-135 for payment of its claim. Section 23-135 specifies that "[a]ll claims against a county shall be filed with the county clerk within ninety days from the time when any materials or labor, which form the basis of the claims, have been furnished or performed . . . ."[26] If the county board disallows a claim, the person—which includes bodies politic and corporate[27]—having a claim against the county "may appeal from the decision of the board to the district court of such county by causing a written notice to be served on the county clerk within twenty days after making such decision."[28]

### (iii) District Court's Determination

The court determined that the claim submission and appeal procedures in § 23-135 did not apply. It reasoned that Lancaster County's duty to provide general assistance was a statutory duty under the general assistance statutes and did not arise out of any contract.

### (c) Principles of Statutory Interpretation

[9-11] The parties' arguments require interpretation of statutes. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[29] It is not within the

---

[26] § 23-135(1).

[27] See Neb. Rev. Stat. § 49-801(16) (Reissue 2021).

[28] § 23-135(4).

[29] *JB & Assocs. v. Nebraska Cancer Coalition*, 303 Neb. 855, 932 N.W.2d 71 (2019).

province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[30] If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[31]

### (d) Specific Statute Versus General Statute

[12] To the extent conflict exists between two statutes, the specific statute controls over the general.[32] During oral argument, the parties took different positions regarding which statute, § 23-135 or § 68-145, was the more specific statute. We see no conflict. If the county claim procedure is required to be followed, the statutes can be read together.

### (e) When Is County Claim Procedure Mandatory?

The county claims statute has ancient roots. The Legislature enacted a precursor to § 23-135 in 1879.[33] Long ago, we declared that the county claims statute applied to "claims originating in contract, express or implied, between the claimant and the county."[34]

[13] We have adhered to this interpretation. Compliance with the county claims statute is mandatory, and the county board has exclusive original jurisdiction, in cases against the county involving claims arising out of contract and containing quasi-judicial questions of fact.[35]

---

[30] *Id.*

[31] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

[32] *Heist v. Nebraska Dept. of Corr. Servs., supra* note 22.

[33] See 1879 Neb. Laws, § 37, p. 366.

[34] *Douglas County v. Taylor*, 50 Neb. 535, 545, 70 N.W. 27, 30 (1897).

[35] See *Jackson v. County of Douglas*, 223 Neb. 65, 388 N.W.2d 64 (1986).

### (f) Does Claim for Reimbursement
### Arise From Contract?

A claim must arise out of contract in order for compliance with the county claims statute to be required. Lancaster County contends that the right to reimbursement arises under statute, not contract. Custer County disagrees.

No express contract between Lancaster County and Custer County is involved. But Custer County argues that there is a contract between Taul and Lancaster County based on the application for general assistance. Custer County highlights that the application contained a subrogation provision for the applicant's claim against a third party, which provision is required by statute.[36] However, the application did not establish a contractual relationship between Lancaster County—the claimant here—and Custer County.

[14] Nor is there an implied contract between Lancaster County and Custer County. "The term 'implied contract' refers to that class of obligations that arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words."[37] Here, there was no mutual agreement and intent to promise between Lancaster County and Custer County. And an implied contract, which refers to an "implied-in-fact contract," should not be confused with an "implied-in-law contract."[38]

[15-17] An "implied-in-law contract," also known as a "quasi-contract," is not a contract.[39] Quasi-contract claims are restitution claims to prevent unjust enrichment.[40] Quasi-contractual obligations do not arise from an agreement; instead, the law imposes them when justice and equity require the

---

[36] See § 68-150.

[37] *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 856-57, 809 N.W.2d 725, 737 (2011).

[38] See *City of Scottsbluff v. Waste Connections of Neb., supra* note 37.

[39] See *id.*

[40] *Id.*

defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense.[41] Thus, the defendant's liability arises under the law of restitution, not contract.[42]

[18,19] The liability of one county to another for the support of a poor person is purely statutory.[43] Although a statute can be the source of a contractual right, a contract will be found to exist only if the statutory language evinces a clear and unmistakable indication that the Legislature intends to bind itself contractually. The general rule is that rights conferred by statute are presumed not to be contractual.[44]

Courts in other states considering an action by one county or town against another for support of the poor have concluded that a county's liability for the support of indigent individuals is not contractual. These courts have stated that the obligation is purely statutory and that a demand for the support of the poor has none of the elements of a contract, express or implied.[45]

We conclude Lancaster County's claim for reimbursement from Custer County is one arising in statute. It is quasi-contractual in nature—an "obligation[] created by law for reasons of justice."[46] Accordingly, compliance with the county claims statute is not mandatory.

---

[41] See *id.*

[42] *Id.*

[43] See *Otoe County v. Lancaster County*, 78 Neb. 517, 111 N.W. 132 (1907).

[44] *United States Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013).

[45] See, e.g., *Gunnison Co. v. Ouray Co.*, 53 Colo. 287, 125 P. 536 (1912); *Augusta v. Chelsea*, 47 Me. 367 (1860); *Lander County v. Humboldt County*, 21 Nev. 415, 32 P. 849 (1893) (superseded by statute as stated in *County of Lander v. Board of Tr. of Elko Gen. Hosp.*, 81 Nev. 354, 403 P.2d 659 (1965)); *Hamlin County v. Clark County*, 1 S.D. 131, 45 N.W. 329 (1890).

[46] *Clark & Enersen, Hamersky, S., B. & T., Inc. v. Schimmel Hotels Corp.*, 194 Neb. 810, 813, 235 N.W.2d 870, 872 (1975).

Though not mandatory, the county claims route could have been pursued. Two cases involving a county's request for reimbursement from a different county refer to the denial of a claim by a county board and then an appeal to the district court.[47] In one case, Frontier County presented a claim to the county board of Lincoln County for expenses incurred in caring for a pauper, the board rejected the claim, and Frontier County "appealed to the district court and there filed a petition for the amount claimed."[48] Similarly, in the other case, Rock County "filed its claim before the board of supervisors of [Holt C]ounty for expenses in caring for an alleged pauper, who became such in [Rock C]ounty, but who was a resident of [Holt C]ounty."[49] After the board rejected the claim, Rock County appealed to the district court.

In neither case did we discuss jurisdiction, mention the county claims statute, or proclaim that compliance with the county claims statute was the exclusive way to reach the district court. We observe that another case made no mention of a claim's being filed with a county board or of the action being an appeal from a board's decision.[50] We do not read these cases as requiring the filing of a claim. We see no reason why Lancaster County could not have pursued that route, if it had chosen to do so. But as discussed above, only in cases against the county involving claims arising out of contract and containing quasi-judicial questions of fact does the county board have *exclusive* original jurisdiction.[51]

---

[47] See, *Frontier County v. Lincoln County*, 121 Neb. 701, 238 N.W. 317 (1931); *Rock County v. Holt County*, 78 Neb. 616, 111 N.W. 366 (1907).

[48] See *Frontier County v. Lincoln County, supra* note 47, 121 Neb. at 702, 238 N.W. at 318.

[49] *Rock County v. Holt County, supra* note 47, 78 Neb. at 616, 111 N.W. at 366.

[50] *Otoe County v. Lancaster County, supra* note 43.

[51] *Jackson v. County of Douglas, supra* note 35.

### (g) Compliance With
### Chapter 68 Procedure

[20-22] By statute, a county has a mandatory duty to provide for poor persons whether or not they are residents of the county.[52] The right to enforce the liability of one county to another county for expenses paid by the former in caring for a poor person whose residence is in the latter county requires compliance with statutory terms and conditions.[53] We have stated that "when a statute gives a right and creates a liability which did not exist at common law, and at the same time points out a specific method by which the right can be asserted and the liability ascertained, that method must be strictly pursued."[54]

The statutes set forth duties for the county where the poor person is found and for the county of the poor person's legal settlement. The clerk of the county board where the poor person has become chargeable has the duty to mail a notice to the clerk of the county board of the poor person's legal settlement that "such person has become chargeable as a poor person, and requesting the authorities of such county to promptly remove such poor person and to pay the expense accrued in taking care of him or her."[55] If the poor person cannot be removed, "then the county taking charge of such individual may sue for, and recover from the county to which such individual belongs, the amount expended for and in behalf of such poor person and in taking care of such person."[56]

The ancient "pauper" statutes contained similar provisions. The precursor statutes referred to "send[ing] a notice by mail to the clerk" of the county commissioners or county board

---

[52] See *Salts v. Lancaster Cty., supra* note 4.

[53] See *Frontier County v. Lincoln County, supra* note 47.

[54] *Frontier County v. Palmer*, 125 Neb. 716, 718, 251 N.W. 830, 830 (1933).

[55] § 68-144.

[56] § 68-145.

and requesting the authorities of the other county to remove the pauper and "to pay the expense accrued."[57] They provided that "the county taking charge of such individual may sue for, and recover from the county to which said individual belongs."[58]

Lancaster County complied with the statutory procedure. The Lancaster County clerk mailed a "Notice of Removal and Payment" to the Custer County clerk. It stated that Taul "has become chargeable as a poor person in a county, which he or she has not established a legal settlement as [sic] the time of applying for aid." The notice requested that Custer County authorities promptly remove Taul from Lancaster County and pay the expense Lancaster County accrued in taking care of Taul. Custer County did not remove Taul. (We doubt that Custer County could have done so without Taul's voluntary participation and consent.) Nor did Custer County pay expenses incurred by Lancaster County. Thus, § 68-145 authorized Lancaster County to "sue for, and recover from the county to which such individual belongs, the amount expended for and in behalf of such poor person and in taking care of such person." We emphasize that whether a county seeking reimbursement for general assistance wishes to use the county claims statute[59] or the direct action statute,[60] that county must follow the procedure specified in § 68-144. Here, it did.

As authorized by § 68-145, Lancaster County filed a lawsuit against Custer County to recover expenses for Taul's care. We conclude that the district court for Lancaster County

---

[57] See, e.g., Comp. Stat. ch. 67, § 12 (1881); Rev. Stat. § 5806 (1913); Comp. Stat. § 68-112 (1929).

[58] See, e.g., Comp. Stat. ch. 67, § 13 (1881); Rev. Stat. § 5807 (1913); Comp. Stat. § 68-113 (1929).

[59] § 23-135.

[60] § 68-145.

had subject matter jurisdiction over Lancaster County's action for reimbursement under the general assistance statutes.

## 2. Plain Error Review

Having resolved the jurisdictional issue, we proceed to the merits. But because no errors were properly assigned, we review for plain error only. We find none.

The district court granted Lancaster County a summary judgment. The court concluded that it had jurisdiction and that § 23-135 did not apply. For the reasons discussed above, we agree that the district court had jurisdiction. The court next determined that Lancaster County produced enough evidence to demonstrate entitlement to reimbursement from Custer County if the evidence were uncontroverted at trial. It further determined that Custer County failed to produce admissible contradictory evidence showing the existence of a material issue of fact regarding compliance with the general assistance statutes, the approval and adoption of the general assistance guidelines, or compliance with those guidelines.

We see no error plainly evident from the record. Accordingly, we affirm the grant of summary judgment in Lancaster County's favor.

## VI. CONCLUSION

We conclude that compliance with the county claims statute is not mandatory and jurisdictional when a county which furnished general assistance to an indigent individual complies with the general assistance statutes in seeking reimbursement from the indigent individual's county of legal settlement. Because Lancaster County so complied and we see no plain error, we affirm the district court's summary judgment.

Affirmed.

Stacy, J., not participating.