IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JOHNSON V. FRAKES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEREMY JOHNSON, APPELLANT,

V.

SCOTT FRAKES, DIRECTOR OF THE NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES, APPELLEE.

Filed March 28, 2023.    No. A-22-561.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Jeremy Johnson, pro se.

Douglas J. Peterson, Attorney General, Scott R. Straus, and Jacob Waggoner, Senior Certified Law Student, for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

Jeremy Johnson filed a mandamus action in the district court for Lancaster County against Scott Frakes, the director of the Nebraska Department of Correctional Services (DCS). Johnson, an inmate in the custody of DCS, is serving consolidated sentences he received in 1990, 1993, and 1997, and as he did in a prior declaratory judgment action, Johnson asserts that DCS should calculate his parole eligibility date under the good time law in effect at the time of his 1997 sentence, rather than that in effect at the time of his initial sentence. The district court found that Johnson's claim was barred by issue preclusion and also found Johnson's claim to be frivolous. For the reasons set forth herein, we affirm.

- 1 -

STATEMENT OF FACTS

In 1990, Johnson was sentenced to imprisonment for a total term of 5 years 8 months to 13 years; the good time law in effect at that time was Neb. Laws 1975, L.B. 567. See Neb. Rev. Stat. § 83-1,107 (Reissue 1987). In 1993, he was sentenced in a second case to a consecutive term of imprisonment of 0 to 1 year, which brought his total term of imprisonment to 5 years 8 months to 14 years. Johnson was paroled in 1995; he subsequently absconded from parole supervision, was arrested and his parole was revoked. In 1997, Johnson was sentenced in a third case to 60 to 100 years' imprisonment.

In 2018, Johnson filed a declaratory judgment action against Frakes and the warden of the DCS facility where he was serving his consolidated sentences. He alleged that the sentences he received in 1990, 1993, and 1997 were incorrectly consolidated and that his parole eligibility date should have been calculated by applying Neb. Laws 1997, L.B. 364, the good time law in effect at the time his sentence became final in the 1997 case. See Neb. Rev. Stat. § 83-1,107 (Cum. Supp. 1998). Johnson asserted his parole eligibility date should have been calculated to be in 2026, rather than 2034. He asked the district court to declare that the defendants' actions in calculating his parole eligibility date violated his constitutional rights, order DCS to apply the "correct" good time law to his sentence, and award him costs. The district court granted summary judgment in favor of the defendants, finding that DCS had appropriately consolidated Johnson's sentences and had correctly applied the good time law under L.B. 567 to Johnson's total aggregate sentence to calculate his parole eligibility date as being sometime in 2034. Johnson appealed, and this court affirmed. See *Johnson v. Frakes*, No. A-20-037, 2020 WL 7034415 (Neb. App. Dec. 1, 2020) (*Johnson I*).

In *Johnson I*, we found that the district court did not err in determining that Johnson's sentences were appropriately consolidated and that L.B. 567 was the applicable good time law and thus the court did not err in granting summary judgment on that basis. Johnson also asserted on appeal that L.B. 567 had been applied retroactively in violation of the Ex Post Facto Clauses of the U.S. and Nebraska Constitutions. Although Johnson had not raised the ex post facto issue before the district court, we observed that the case did not present a retroactive application of a law in violation of the Ex Post Facto Clause. In other words, we noted that that L.B. 567 had been applied to Johnson's crimes and consolidated sentences all occurring after its enactment (rather than to crimes which had occurred before its enactment). See *Johnson v. Frakes*, No. A-20-037, 2020 WL 7034415 (Neb. App. Dec. 1, 2020).

On October 1, 2021, Johnson filed a "PETITION FOR PREEMPTORY WRIT OF MANDAMUS." In it, he asked the district court to compel DCS to recalculate and change his parole eligibility date from 2034 to 2026. He alleged that DCS recalculated his 1997 sentence under L.B. 567 in violation of the ex post facto and separation of powers clauses of the state and federal constitutions.

A hearing was held on Johnson's petition and a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6). At the hearing, the district court took judicial notice of an exhibit containing the court's order granting summary judgment in the previous declaratory judgment action as well as this court's memorandum opinion in *Johnson I*. On June 22, 2022, the district court entered an order in the present case, denying Johnson's petition for writ of mandamus and dismissing the case

with prejudice (although the court denied Frakes' motion to dismiss, finding that a motion under § 6-1112(b) was not the correct procedural mechanism to address mandamus). In dismissing Johnson's petition, the court determined that his mandamus action was barred by the doctrine of res judicata or issue preclusion. The court stated that "for the same reasons articulated by [it] and the appellate court in *Johnson I*, the correct good time law is being applied to Johnson's sentences and his [parole eligibility date] is correctly calculated." The district court stated further that, "just as the appellate court previously determined," L.B. 567 had been applied in this case to Johnson's crimes and consolidated sentences occurring after its enactment and that no ex post facto violation had occurred. Finally, the district court found Johnson's claim to be frivolous, pursuant to Neb. Rev. Stat. § 25-3401(2)(b) (Cum. Supp. 2022), noting that Johnson had merely repackaged his previously rejected claim as a request for mandamus instead of one for declaratory relief.

On July 22, 2022, Johnson filed a notice of appeal in the district court. On that same day, he also filed two documents, both entitled "APPLICATION TO PROCEED IN FORMA PAUPERIS." The first document is unsigned and contains no written date (other than that of the clerk of the district court's filing stamp). It provides, "COMES NOW Jeremy Johnson pro se and makes application to the Court to allow Petitioner to Proceed in forma pauperis. In support of the application, the Petitioner has attached his poverty affidavit." The record on appeal does not include an attachment to this document. The second document, signed by Johnson, notarized, and dated June 19, 2022, provides:

The undersigned, being first duly sworn on oath, deposes and states:

1. I am the petitioner in the above entitled action[.]

2. I want to file an appeal from the denial of my Writ of Mandamus denied by the District Court of Lancaster County Nebraska by [the district court judge].

3. That I believe I am entitled to redress of these issues.

Therefore, I request the Court to grant my application to proceed in form of [sic] pauperis from this point forward, and that this court has previously granted such motion.

The record does not include any ruling by the district court on Johnson's application to proceed in forma pauperis (IFP) on appeal. The record does include a certificate of the clerk of the district court clerk, which notes, among other things, the filing of Johnson's notice of appeal and IFP affidavit and directing his appeal to this court.

## ASSIGNMENTS OF ERROR

Johnson's brief does not include a section for assignments of error. As such, it does not comply with appellate court rules.

Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2022) requires an appellant's brief to contain, under the appropriate heading, "[a] separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The rule also provides that "[e]ach assignment of error shall be separately numbered and paragraphed," and it warns that "[c]onsideration of the case will be limited to errors assigned and discussed in the brief." *Id.* However, "[t]he court may, at its option, notice a plain error not assigned." *Id.*

Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. *County of Lancaster v. County of Custer*, 313 Neb. 622, 985 N.W.2d

612 (2023). Any party who fails to properly identify and present its claim does so at its own peril. *Id.* Depending on the particulars of each case, failure to comply with the mandates of § 2-109(D) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all. *County of Lancaster v. County of Custer, supra.*

Johnson's brief contains headings in the argument section of his brief which purport to assign error by the district court. The Nebraska Supreme Court has rejected argument headings as insufficient to assign error. See *id.* Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error. *Id.* We will review for plain error.

## STANDARD OF REVIEW

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court. *Alpha Wealth Advisors v. Cook*, 313 Neb. 237, 983 N.W.2d 526 (2023).

## ANALYSIS

*Jurisdiction.*

Frakes asserts that this court does not have jurisdiction, arguing that Johnson's appeal has not been perfected because there is no record that the district court granted the application to proceed IFP on appeal. It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *County of Lancaster v. County of Custer, supra.* Accordingly, we consider Frakes' jurisdictional argument, even though our review is otherwise limited to plain error.

In arguing that Johnson did not perfect his appeal, Frakes notes Neb. Ct. R. App. P. § 2-101(A)(1) (rev. 2022), which states that "Every appeal shall be deemed perfected when the notice of appeal . . . and . . . an application to proceed in forma pauperis and a poverty affidavit . . . have been filed in the office of the clerk of the court from which the appeal is taken and such application has been granted by that court."

An IFP appeal is perfected when the appellant timely files a notice of appeal and a proper affidavit of poverty. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Although there is nothing in the record to show that the district court explicitly granted Johnson's application to proceed IFP, in light of the clerk's certificate noting Johnson's poverty affidavit and notice of appeal and directing the appeal to this court, we conclude that the court implicitly granted Johnson's request. See *In re Guardianship of Breeahana C.*, 14 Neb. App. 182, 706 N.W.2d 66 (2005) (by directing clerk magistrate to forward appeal documents to appellate court, trial court implicitly granted appellant's motion to proceed IFP). And, the Nebraska Supreme Court has held that the absence of an order allowing a party to proceed in forma pauperis does not divest this court of jurisdiction over an appeal. See, *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002); *In re Interest of N.L.B.*, 234 Neb. 280, 450 N.W.2d 676 (1990).

Frakes also argues that it is unclear whether Johnson's poverty affidavit was sufficient to perfect his appeal, although he recognizes that the absence of a sworn statement relating to Johnson's ability to pay does not necessarily deprive this court of jurisdiction. Neb. Rev. Stat. § 25-2301.01 (Reissue 2016) provides that an application to proceed IFP "shall include an affidavit stating that the affiant is unable to pay the fees and costs or give security required to proceed with the case, the nature of the action, defense, or appeal, and the affiant's belief that he or she is entitled to redress." The Nebraska Supreme Court has stated that as long as the poverty affidavit itself includes some indication that a defendant is requesting or applying for IFP status, § 25-2301.01 does not require that a separate application be filed in addition to the poverty affidavit. *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001).

Johnson's signed and notarized application to proceed IFP on appeal states that he is the petitioner in this case, that he wants to file an appeal from the district court's denial of his mandamus action, and that he believes he is entitled to redress. In it, he requested the court to grant his application to proceed IFP on appeal and noted that the court had granted a previous IFP request. As such, Johnson's application contains an indication that he is applying for IFP status and together with his timely notice of appeal was sufficient to perfect his appeal to this court. See *State v. Greer, supra*.

*Preclusion Arguments.*

Johnson argues that the district court erred in denying his writ for mandamus based on claim preclusion (res judicata) or issue preclusion (collateral estoppel). He also argues that the rulings in the previous declaratory judgment action cannot have a preclusive effect in the present case because of the different legal standards involved in mandamus and declaratory judgment actions. We agree with the district court that Johnson's claim in the present case was barred by the doctrine of issue preclusion, and thus we find no plain error in the court's dismissal of Johnson's petition for writ of mandamus.

Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Wood v. Bass*, 30 Neb. App. 391, 969 N.W.2d 678 (2021). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* Issue preclusion applies only to issues actually litigated. *Id.*

In Johnson's present mandamus action, he raised the issue of whether L.B. 567 was the applicable good time law to determine his parole eligibility date for his consolidated sentences. That identical issue was determined by the district court, a court of competent jurisdiction, in the prior declaratory judgment action, which resulted in a final judgment on the merits that was affirmed by this court on appeal. Frakes, the defendant in this case, was also a defendant in the prior case. The district court did not err in the present mandamus action in finding that Johnson was barred from relitigating the issue of whether L.B. 567 was the applicable law under which to determine his parole eligibility date on his consolidated sentences.

Johnson relies on *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 135 S. Ct. 1293, 191 L. Ed. 2d 222 (2015), to argue that issues are not identical for issue preclusion purposes

if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same. Essentially, Johnson relies on the fact that his two suits involved different causes of action, one for declaratory relief and one for mandamus, which are governed by different statutory provisions. Contrary to Johnson's assertions, the *B & B Hardware* case does not stand for the proposition that issue preclusion does not apply in such circumstances. Johnson's arguments with respect to preclusion fail.

*Constitutional Arguments.*

Johnson also argues that there was error with respect to his claims of ex post facto and separation of powers violations. First, Johnson argues that DCS has retroactively applied L.B. 567 to calculate his parole eligibility date in violation of the Ex Post Facto Clauses of the state and federal constitutions. He notes that in this court's memorandum opinion in *Johnson I*, we stated that his constitutional challenges in the declaratory judgment action could not be heard because he did not properly raise them before the district court, and he argues that preclusion does not apply to those claims. While Johnson did not raise the ex post facto issue before the district court in the declaratory judgment action, he did in the present mandamus action and the court found no ex post facto violation. The court noted, as we did in *Johnson I*, that in calculating Johnson's parole eligibility date, the good time law found in L.B. 567 was not applied to crimes occurring before its enactment; but rather, was applied to Johnson's crimes and consolidated sentences all occurring after its enactment. We find no plain error in the district court's rejection of Johnson's ex post facto argument.

Finally, Johnson argues that the district court erred in failing to address his alleged Separation of Powers Clause violations. He appears to argue that DCS usurped the power of the Legislature in applying L.B. 567 to calculate his parole eligibility date. His argument relies on his assertion that DCS should have applied the good time law in effect at the time of his 1997 sentence to calculate his parole eligibility date. As set forth above, Johnson's claims in this case with respect to the calculation of his parole eligibility date were barred by the doctrine of issue preclusion, and the court determined that no ex post facto violation had occurred. We have affirmed those findings and find no plain error in the court's implicit rejection of Johnson's separation of powers argument.

CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of Johnson's petition for writ of mandamus with prejudice.

AFFIRMED.