## JOHN W. ALLSMAN v. EUGENE RICHMOND.

FILED JUNE 23, 1898.    No. 8160.

1. **Conflicting Evidence:** REVIEW. The finding of a jury on conflicting evidence will not be disturbed unless clearly wrong.

2. **Evidence of Agency.** The facts stated in the opinion *held* ample to sustain a finding that an agency existed embracing the right to make the contract on which the action was grounded.

3. **Assignment of Error:** EVIDENCE. An assignment of error in this court that the district court erred in admitting the evidence of certain witnesses will be overruled if any of the evidence given by such witnesses was competent.

4. ———: INDEFINITENESS. Alleged errors will not be reviewed unless assigned in the petition in error with such definiteness as to clearly indicate the particular ruling complained of.

5. ———: ———. An assignment of error that "the court erred in overruling the motion for a new trial" is too indefinite where there are several grounds of error set forth in such motion.

ERROR from the district court of Saline county. Tried below before HASTINGS, J. *Affirmed.*

*Joshua Palmer* and *E. S. Abbott,* for plaintiff in error.

*J. D. Pope* and *F. I. Foss, contra.*

SULLIVAN, J.

In this action Eugene Richmond sued John L. Allsman and John W. Allsman to recover for services rendered in training, driving, and caring for a racing stallion during the racing season of 1894. The cause was tried before a justice of the peace of Saline county and resulted in a judgment against both defendants. From this judgment John W. Allsman alone appealed and filed in the district court a general denial to the petition. Upon the issues joined a trial was had to a jury and the plaintiff was again successful. The defendant John W. prosecutes error to this court, and among the assignments insists that the verdict is not sustained by sufficient evidence.

The horse was owned by John W., and managed by his son, John L., with whom the contract of hiring was originally made. The theory of the defense was that the elder Allsman had given his son the exclusive use of the stallion for the season of 1894, and that the latter was to have complete charge of him, be responsible for his entire care and management, and receive his entire earnings. Much evidence was adduced in support of this theory, while the plaintiff, to establish the liability of John W., testified as follows:

On the 28th of July, 1894, I made an agreement with John L. Allsman to train and drive his horse, "Charles Birch." He represented to me that he was the owner of the horse and I was to receive $25 a month and my expenses during the racing season of 1894. I took the horse and went to work with him. Some three or four days after that I was in the stall with the horse and a

gentleman came in and was looking at the horse. I did not know him, or who he was. He commenced to talk about the horse, and I went on to tell him what the horse was and what his name was, like I would to any stranger —liked to recommend him. He says, "I know all about this horse. I know this horse." He says, "I own this horse." I said, "This young man that I hired to said he owned the horse—J. L. Allsman." He said, "He is my son, but I own the horse." I said, "I hired to him, thinking he owned the horse, because he represented to me that he did." He says to me, "I let this boy manage the horse this summer for the simple reason that I am no horseman myself and know nothing about it;" that he did not know about horses, "but," he says, "any bargain you make with this young man," Logan he called him, "is all right and satisfactory with me." So under this consideration I went on with the horse. * * *

Q. Were you at the races in Edgar?

A. No, sir.

Q. Did you have any conversation with Mr. J. W. Allsman in reference to the races at Edgar?

A. Yes, sir.

Q. What was that conversation?

A. The date the entries were closed for the races at Edgar, he and another son of his, Ed they called him, I did not know his name,—he came up there and came to me and says, "Now, Richmond, I came up to ask your advice about entering this horse in the races at Edgar." He says, "Logan wants to start him from there," and I told him that I would not consent to enter him there unless I saw you and asked your advice about it. I told him I did not think it was right to do it, because I did not think the horse was in condition to go as hard as he would have to race there,—to go as hard as he would have to. I knew that there were horses there enough faster than this horse the way he was; that the horse was not in shape to go as hard as he would have to go, and I said I did not think it would pay. He says, "I

think so too." I told him I would not advise to enter the horse there. He says these boys had the management of this horse and have had their way heretofore about him. He says, "I have made up my mind I would have my way this year;" he says, "this horse belongs to me and I propose to do as I think best." He says, "If you say not to enter him there, that he is not in shape, I will not do so." I told him that it was not best, so he did not enter him, and he was not entered there.

Q. He was not entered there?

A. No, sir; he was not entered there.

The plaintiff also produced as a witness Mr. Holland, the secretary of the Friend Fair Association, who testified that the horse had been entered for the Friend races, during the season of 1894, by J. W. Allsman, who paid the entrance fee. It was also shown by the testimony of Mr. Pope that J. W. Allsman, while on the race track at Friend, paid delinquent dues of the previous year, amounting to $29.50, in order to gain the horse admission to the races. This evidence is all disputed, but it seems to have commended itself to the jury. They based their verdict upon it, and we think they were justified in doing so. It entirely warrants the conclusion that J. L. Allsman, in handling the horse and in hiring the plaintiff, was transacting his father's business. It is ample to sustain a finding that an agency existed embracing the right to make the contract on which this action is grounded.

Another assignment of error is stated in this language: "The court erred in admitting the evidence of J. J. Holland and his book, and J. D. Pope, John L. Allsman, and Eugene Richmond." This assignment is altogether too general to demand consideration. Much of the evidence of the witnesses named was received without objection and most of it was clearly competent and relevant to the questions in dispute. In *Eagle Fire Co. v. Globe Loan & Trust Co.*, 44 Neb. 380, and in *Kearney Electric Co. v. Laughlin*, 45 Neb. 390, it was held that an assignment

of error based on the admission of all the evidence of a certain witness cannot be sustained if any part of the evidence of such witness was properly received. The rule of practice thoroughly established by the decisions of this court is that alleged errors will not be reviewed unless assigned in the petition in error with such definiteness as to clearly indicate the particular ruling complained of. (*Bloedel v. Zimmerman*, 41 Neb. 695; *City of Omaha v. Richards*, 49 Neb. 244; *Farwell v. Cramer*, 38 Neb. 61; *Phœnix Ins. Co. v. King*, 54 Neb. 630.)

It is also assigned for error that "the court erred in overruling the motion for a new trial." To which of the four grounds alleged in the motion for a new trial this assignment is directed we can only conjecture. It is too indefinite to merit attention and is overruled on the authority of *City of Chadron v. Glover*, 43 Neb. 732; *Glaze v. Parcel*, 40 Neb. 732; *Stein v. Vannice*, 44 Neb. 132; *Conger v. Dodd*, 45 Neb. 36; *Pearce v. McKay*, 45 Neb. 296; *Moore v. Hubbard*, 45 Neb. 612. The judgment of the district court is right and is

AFFIRMED.