Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/27/2026 08:09 AM CST

In re Estate of Theresa A. Meyers, deceased.

Claire Weides et al., appellees, v. Shirley
Clouse et al., appellants.

In re Theresa A. Meyers Revocable Trust.

Claire Weides et al., appellees, v. Shirley
Clouse et al., appellants.

___ N.W.3d ___

Filed February 27, 2026.   Nos. S-24-625, S-24-626.

1. **Decedents' Estates: Attorney Fees: Appeal and Error.** In review-
   ing the award of attorney fees in cases arising under Neb. Rev. Stat.
   § 30-2482 (Reissue 2016), the standard of review in the district courts
   and appellate courts is for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
   on the record, the inquiry is whether the decision conforms to the law,
   is supported by competent evidence, and is neither arbitrary, capricious,
   nor unreasonable.
3. **Appeal and Error.** Absent plain error, an appellate court can consider
   only errors both specifically assigned and specifically argued in the par-
   ties' initial brief.
4. \_\_\_\_. When reviewing for plain error, an appellate court is concerned
   with error that is plainly evident from the record and of such a nature
   that to leave it uncorrected would result in damage to the integrity, repu-
   tation, or fairness of the judicial process.
5. \_\_\_\_. Generally, an appellate court will find plain error only when a
   miscarriage of justice would otherwise occur.
6. \_\_\_\_. Under the party presentation principle, absent plain error, courts
   are neutral arbiters of matters the parties present.
7. **Penalties and Forfeitures.** Forfeiture is the failure to make the timely
   assertion of a right.

Petition for further review from the Court of Appeals, Riedmann, Chief Judge, and Bishop and Welch, Judges, on appeal thereto from the County Court for Douglas County, Jeffrey L. Marcuzzo, Judge. Judgment of Court of Appeals reversed and remanded with direction.

Claude E. Berreckman, Jr., of Berreckman & Bazata, P.C., L.L.O., and Elizabeth J. Klingelhoefer, of Jacobsen, Orr, Lindstrom & Holbrook, for appellants.

Matthew Wurstner, of Carlson & Blakeman, L.L.P., for appellee Carlson & Blakeman, LLP.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn JJ.

Bergevin, J.

## INTRODUCTION

These consolidated cases concerning the reasonableness of attorney fees charged to an estate and revocable trust come before us on further review from the Nebraska Court of Appeals. The county court found that the charged hourly attorney fees were reasonable. On appeal, the Court of Appeals found that the parties' hourly fee agreement was ineffective. The Court of Appeals then reviewed the reasonableness of the attorney fees as it calculated them under the parties' previous fee agreement. The primary issue on further review is whether the Court of Appeals properly considered the effectiveness of the parties' hourly fee agreement. We conclude that it did not. Accordingly, we reverse the decision of the Court of Appeals and remand the cause with direction.

## BACKGROUND

### Fee Agreements

In 1995, Theresa A. Meyers created and funded a revocable trust and executed a pour-over will, whereby her remaining estate at her death would transfer to the trust. In 2017, Meyers

executed a superseding will, which did not contain a pour-over provision. Meyers died in 2022.

The personal representative named in Meyers' 2017 will hired Darren Carlson and his law firm, Carlson & Blakeman, LLP (the firm), to represent him in his fiduciary capacity for Meyers' estate. Shortly thereafter, Carlson discovered the existence of the revocable trust, which had been unknown to all interested parties.

The trust named three cotrustees. One of the three cotrustees subsequently resigned, leaving two cotrustees to administer the trust. Carlson began representing these two cotrustees in their fiduciary capacities.

Initially, all three fiduciaries orally agreed that the firm's attorney fees would be charged at a rate of 2 percent of the gross assets of the estate and trust. Thereafter, Carlson discovered at least $8 million in additional stock owned by the trust. As a result, Carlson and the three fiduciaries orally agreed to reduce the firm's fee from 2 percent to 1 percent.

In January 2023, one of the two cotrustees retained separate counsel to represent him in his fiduciary capacity. In March, after several beneficiaries filed a petition in county court to remove the personal representative and appoint a successor, Carlson sent a written modified fee agreement to the personal representative and the cotrustee whom he was still representing. The agreement notified the personal representative and the cotrustee that, given the likelihood of litigation, the firm's fee would be based on hourly billing instead of 1 percent of the gross estate and trust assets. The personal representative and the cotrustee still represented by the firm both signed the written agreement. The cotrustee who had retained separate counsel was not a party to this agreement.

In April 2023, the personal representative resigned from his fiduciary role. The firm withdrew as counsel for the personal representative and the cotrustee it had continued to represent. In total, the firm charged $171,340 in hourly fees: $90,020 for 314.3 hours worked in the estate matter, $76,320

for 245.8 hours worked in the trust matter, and a $5,000 flat fee for managing the sale of Meyers' home.

In January 2024, some of the beneficiaries of the trust and devisees of the estate (Appellants) filed petitions in county court for review of the firm's compensation under Neb. Rev. Stat. § 30-2482 (Reissue 2016) in both the estate case and the trust case, alleging that the charged fees were excessive. In addition, the successor personal representative of the estate filed a motion in the estate case to set an evidentiary hearing over the reasonableness of fees.

## County Court

A consolidated hearing was held on Appellants' petitions and the successor personal representative's motion. The hearing focused on two issues: (1) whether the firm's charged fees were reasonable and (2) whether Carlson's concurrent representation of the personal representative of the estate and cotrustees of the trust constituted a conflict of interest, such that the firm should receive none of its charged fees.

At the hearing, the county court received evidence in the form of expert testimony and a written report from two estate planning attorneys, who both gave their opinion on the reasonableness of the firm's fees. Additionally, the county court heard testimony from Carlson and one of his law partners, the attorney for the second cotrustee who did not sign the written fee agreement, and the attorney who helped draft Meyers' original will and trust.

The county court found that "the attorney fees charged by and paid to [the firm] were fair, reasonable, necessary, and not excessive." The county court based this finding upon the totality of the evidence, which included the complexity of the estate, the length of time spent by the firm, the time and expertise necessary to handle the tax issues, the work involved in dealing with banking and investment entities, the time spent dealing with contentious parties, and the large number of beneficiaries involved. Additionally, the county

court found that the firm did not have a conflict of interest. The county court did not address whether the parties' written fee agreement was effective.

The Appellants timely appealed.

## Court of Appeals

On appeal, Appellants assigned that the county court erred in (1) "failing to address the unclear nature of Carlson's fee agreement with the fiduciaries of the estate and the trust"; (2) "failing to consider the results obtained by Carlson in representing the personal representative and co-trustees in determining the reasonableness of the fee"; (3) "finding that the attorney fees charged and collected by Carlson were fair, reasonable, necessary, and not excessive"; and (4) "failing to determine that Carlson had a conflict of interest in representing both the personal representative of the . . . estate and the co-trustees" of the trust.

The Court of Appeals first addressed Appellants' assignment that the county court erred by failing to determine Carlson had a conflict of interest in representing both the personal representative and the cotrustees. Appellants contended that Carlson violated the Nebraska Rules of Professional Conduct and that he was barred from receiving payment for any services rendered to the trust or estate. Specifically, Appellants argued that Carlson's percentage-based fee agreement was a contingency fee and that his failure to reduce it to writing for 10 months was a violation of the professional rules. Appellants also argued that Carlson's written modification to the fee agreement in March 2023 was not communicated to the fiduciaries within a reasonable time after commencing the representation. The Court of Appeals determined that Carlson's representation of the personal representative and the cotrustees did not create a conflict of interest.

The Court of Appeals next considered Appellants' assignment that the county court erred in failing to address the unclear nature of Carlson's fee agreement with the fiduciaries

of the estate and trust. In the introduction to its opinion, the Court of Appeals characterized this assignment of error as a "conten[tion] that the [county] court erred in failing to address the enforceability of the written fee agreement."[1] The Court of Appeals determined that the effectiveness of the written fee agreement was governed by the Nebraska Uniform Trust Code and the language of the trust, which required cotrustees to act with majority consent in matters of trust administration. The Court of Appeals reasoned that because only one of the two cotrustees signed the written fee modification, the cotrustees did not have majority consent; therefore, the trust was not bound to the fee agreement.

The Court of Appeals found that the parties' initial fee agreement was a three-party agreement between Carlson, the personal representative for the estate, and the trust's two cotrustees. The Court of Appeals determined that without the second cotrustee's consent, there was no three-party agreement for the firm's attorney fees to be billed hourly; only Carlson and the personal representative consented to the modification. Accordingly, the Court of Appeals found that the modification of the initial fee agreement was ineffective and concluded that the county court erred by analyzing the firm's fees based on an hourly rate.

Finally, the Court of Appeals turned to Appellants' assignments of error related to the reasonableness of the firm's attorney fees. After determining that the parties' previous fee agreement, at 1 percent of the combined estate, was the effective fee agreement, the Court of Appeals found that 1 percent of the combined estate was $112,902.42 and that this fee was reasonable for the amount of work the firm performed.

The firm timely filed a petition for further review, which we granted.[2]

---

[1] *In re Estate of Meyers*, Nos. A-24-625, A-24-626, 2025 WL 1872057 at *1 (Neb. App. July 8, 2025) (selected for posting to court website).

[2] See, generally, Neb. Ct. R. App. P. § 2-102(F) to (H) (rev. 2022).

## ASSIGNMENTS OF ERROR

The firm assigns, restated, that the Court of Appeals erred by (1) considering, sua sponte, whether, under the language of a trust, a cotrustee's consent was necessary for another cotrustee to enter into a fee agreement with their chosen attorney and (2) concluding such consent was necessary.

## STANDARD OF REVIEW

[1,2] In reviewing the award of attorney fees in cases arising under § 30-2482, the standard of review in the district courts and appellate courts is for error appearing on the record.[3] When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

## ANALYSIS

We first address the issue of whether the Court of Appeals erred by considering the effectiveness of the written fee agreement. Because we conclude that it did, we do not address the firm's second assignment of error. We express no opinion on the Court of Appeals' analysis or resolution of that assignment.

On further review, the firm assigns that the Court of Appeals erred by considering, sua sponte, whether, under the language of a trust, the consent of a cotrustee was necessary for another cotrustee to enter into a fee agreement with the firm. We agree. Before addressing this assignment, we note that Appellants could have presented their assignment of error about the unclear nature of the fee agreement more precisely.

[3-5] As stated above, the standard of review when reviewing the award of attorney fees in cases arising under § 30-2482 is for error appearing on the record.[5] Absent plain error,

---

[3] *In re Estate of Nicholson*, 241 Neb. 447, 488 N.W.2d 554 (1992).

[4] *In re Estate of Walker, ante* p. 139, 26 N.W.3d 316 (2025).

[5] *In re Estate of Nicholson, supra* note 3.

an appellate court can consider only errors both specifically assigned and specifically argued in the parties' initial brief.[6] When reviewing for plain error, an appellate court is concerned with error that is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[7] Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.[8]

[6] Under the party presentation principle, absent plain error, courts are neutral arbiters of matters the parties present.[9] Thus, we have explained that our requirement that appellants specifically assign and specifically argue any alleged error of the lower court is not to impede appellate review but to facilitate it by preventing the parties from shifting to appellate courts the critical tasks of searching the record for relevant facts, identifying possible trial error, and articulating a legal rationale that supports the assigned error.[10] This ensures that appellees have notice of what matters must be answered, that precedent is not established with inadequate briefing, and that appellate courts do not inadvertently act as advocates instead of arbiters.[11]

[7] The firm argues that the issue of whether consent of both cotrustees was necessary to bind the trust to the written fee agreement was raised sua sponte by the Court of Appeals and violated the party presentation principle. The firm contends that the issue has been waived because Appellants never raised this issue on appeal. This argument conflates waiver and forfeiture. Forfeiture is the failure to make the timely

---

[6] See *White v. White, ante* p. 256, 26 N.W.3d 924 (2025).

[7] *Kellogg v. Mathiesen, ante* p. 223, 26 N.W.3d 651 (2025).

[8] *Id.*

[9] *White v. White, supra* note 6.

[10] *Id.*

[11] *Id.*

assertion of a right.[12] Here, Appellants forfeited the issue of the effectiveness of the written fee agreement by not raising it on appeal.

When discussing Appellants' assignment that the county court erred in "failing to address the unclear nature of [the] fee agreement," the Court of Appeals' characterized that assignment as a contention that the county court erred in "failing to address the enforceability of the written fee agreement."[13] But that is not what Appellants argued before the Court of Appeals. Instead, Appellants argued in their brief that, contrary to the Nebraska Rules of Professional Conduct, after commencing representation, Carlson did not reduce his fee agreements to writing or communicate to the three fiduciaries about changes in the basis of the fee within a reasonable time.[14] Appellants contended in their brief that these alleged ethical violations barred Carlson from recovering attorney fees. However, these arguments did not raise the issue of whether the written fee agreement was effective as a matter of contract.

To ensure parties are notified of what matters to address, and to facilitate the appellate process, appellants must specifically assign and specifically argue any alleged error of the lower court.[15] On appeal, Appellants did not specifically assign or specifically argue the effectiveness of the written fee agreement. To the extent Appellants may have raised the issue below, the county court did not plainly err by not finding that the written fee agreement was ineffective. Therefore, we conclude that the Court of Appeals erred in considering the effectiveness of the written fee agreement on appeal.

---

[12] E.g., *State v. Bret*, 318 Neb. 995, 20 N.W.3d 364 (2025). See *State v. Hagens, ante* p. 65, 26 N.W.3d 174 (2025).

[13] *In re Estate of Meyers, supra* note 1, 2025 WL 1872057 at *1.

[14] See Neb. Ct. R. of Prof. Cond. § 3-501.5(b) and (c).

[15] See, § 2-102(F)(3) and (G); Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2025). See, also, *White v. White, supra* note 6.

We next address the county court's finding that the firm's hourly fees were reasonable to determine whether that finding conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[16]

> (2) Factors to be considered as guides in determining the reasonableness of a fee include the following:
>
> (a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;
>
> (b) The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;
>
> (c) The fee customarily charged in the locality for similar services;
>
> (d) The amount involved and the results obtained;
>
> (e) The time limitations imposed by the personal representative or by the circumstances;
>
> (f) The nature and length of the relationship between the personal representative and the person performing the services; and
>
> (g) The experience, reputation, and ability of the person performing the services.[17]

We find no error appearing on the record after reviewing the county court's finding that the firm's attorney fees were reasonable. At the consolidated hearing, the county court heard expert testimony on attorney fees in trust and estate matters. It also heard a detailed account of the work performed by the firm. In its order, the county court referenced many of the factors listed above, such as the complexity of the estate, the time and expertise necessary to handle the tax issues, and the large number of beneficiaries involved. We find nothing in the record to suggest that the county court's

---

[16] *In re Estate of Walker, supra* note 4.

[17] § 30-2482.

finding was unsupported by competent evidence or that its finding was arbitrary, capricious, or unreasonable.

## CONCLUSION

Appellants forfeited the issue of the written fee agreement's effectiveness because they did not specifically assign or specifically argue that issue on appeal. The county court did not plainly err by not finding that the written fee agreement was ineffective. Under the party presentation principle, the Court of Appeals erred by considering the effectiveness of that agreement. We find no error in the county court's finding that the firm's fees were reasonable. Accordingly, we reverse the decision of the Court of Appeals and remand the cause to that court with direction to affirm the order of the county court.

REVERSED AND REMANDED WITH DIRECTION.