Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/26/2026 08:08 AM CDT

Hannah Fischer and Conan Thomas, appellants, v.
Southeast Community College, a Nebraska
nonprofit corporation, et al., appellees.

___ N.W.3d ___

Filed June 26, 2026.    No. S-25-117.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

2. ____. The purpose of requiring particularity in assignments of error is not to frustrate or impede appellate review but to facilitate it by preventing parties from shifting to appellate courts the critical tasks of searching the record for relevant facts, identifying possible trial error, and articulating a legal rationale that supports the assigned error.

3. **Rules of the Supreme Court: Appeal and Error.** Parties who wish to secure appellate review must abide by the rules of the Nebraska Supreme Court, and those who fail to comply with the appellate briefing rules do so at their own peril.

4. **Appeal and Error.** A generalized and vague assignment of error that does not advise an appellate court of the particular issues submitted for decision will not be considered.

5. ____. It is a settled rule that headings in the argument section of an appellate brief will not substitute for the requirement of stating a separate, concise assignment of each error a party contends was made by the trial court.

6. **Rules of the Supreme Court: Appeal and Error.** Depending on the particulars of each case, a party's failure to comply with the mandates of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2025) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.

7. **Appeal and Error: Words and Phrases.** Plain error is error plainly evident from the record which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause

a miscarriage of justice or result in damage to the integrity, reputation, or fairness of the judicial process.

8. **Jurisdiction.** When a jurisdictional question does not involve a factual dispute, it presents a question of law.

9. **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.

10. **Jurisdiction: Appeal and Error.** Plain error review does not, and cannot, constrain an appellate court's duty to ensure that it has jurisdiction. Therefore, even when circumstances may warrant plain error review of the merits, an appellate court will analyze its jurisdiction using the same standard of review ordinarily applied to jurisdictional issues.

11. **Judgments: Jurisdiction: Time: Appeal and Error.** Generally, appeals must be filed within 30 days after the entry of the judgment, decree, or final order. However, that period may be terminated by filing a motion to alter or amend within 10 days of the judgment. When such a motion is timely filed, a new period of 30 days for filing a notice of appeal commences when the terminating motion is ordered dismissed.

12. **Pleadings: Judgments.** As a general rule, determining whether a motion seeks substantive alteration of a judgment is based on a review of the contents of the motion, not its title.

13. **Pleadings: Judgments: Time.** To qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under Neb. Rev. Stat. § 25-1329 (Reissue 2016), and must seek substantive alteration of the judgment.

14. **Appeal and Error.** When reviewing proceedings for plain error, appellate courts are neither constrained by the specific arguments raised in the briefs nor required to consider every error that may have occurred in the lower court.

15. ____. Courts should find plain error only in those rare instances where it is warranted, as opposed to invoking it routinely.

16. ____. Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

William R. Barger, of Sullivan Law, P.C., L.L.O., for appellants.

Joshua J. Schauer, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellees.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Stacy, J.

An enrolled student and a prospective student filed a lawsuit against a community college and several of its employees seeking to challenge the community college's proof of vaccination policy. After allowing the original complaint to be amended, the district court dismissed the amended complaint for lack of subject matter jurisdiction and failure to state a claim, and it concluded further amendments would be futile. The plaintiffs filed this appeal, which we moved to our docket. We review the proceedings for plain error due to a briefing deficiency. Finding no plain error, we affirm.

## I. BACKGROUND

### 1. Original Complaint

In December 2023, Hannah Fischer filed a complaint in the district court for Lancaster County against four named defendants: Southeast Community College; Neal Stenberg, chairman of the community college's board; Beverly Cummins, director of the community college's Lincoln, Nebraska, campus; and Jill Sand, dean of the School of Health Sciences at the community college's Lincoln campus. The complaint was styled as five separate causes of action titled (1) "Breach of Implied Contract," (2) "Violation of Due Process," (3) "Negligence," (4) "Nebraska Consumer Protection Act," and (5) "Ultra Vires."

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) and for failure to state a claim pursuant to § 6-1112(b)(6).

In May 2024, the district court entered a written order granting the motion to dismiss, and Fischer was given leave to file an amended complaint.

### 2. Amended Complaint

In June 2024, Fischer filed an amended complaint that added an additional plaintiff, Conan Thomas. The amended complaint named all the same defendants as the original complaint but alleged that Stenberg, Cummins, and Sand were being sued in both their official and individual capacities. For ease of reference, the defendants are generally referred to collectively as "SCC."

The amended complaint was styled as four "cause[s] of action" titled (1) "Breach of Implied Contract," (2) "Violation of Due Process and Equal Protection," (3) "Negligence," and (4) "Ultra Vires."

The proof of vaccination policy being challenged was not attached to, quoted, or described in the amended complaint, so the details of that policy during the relevant timeframes are largely unknown. But it was generally alleged that the policy required students to provide proof of vaccination for COVID-19 in order to participate in certain clinical programs, and the policy allowed students to request both medical and religious exemptions.

### (a) Fischer's Allegations

Fischer alleged that in the fall of 2021, she was enrolled in the community college's nursing program. At that time, SCC required proof of COVID-19 vaccination, but Fischer's physician "issued a recommendation that Fischer not receive" the vaccine "based upon her medical conditions." Fischer alleged that she provided this recommendation to SCC's "management staff" but was never told "whether her implied request for a medical exemption was accepted, rejected or otherwise." Fischer also alleged that the "requirements or parameters of any medical, religious or other exemptions" were not clear to her.

Because Fischer had not provided proof of COVID-19 vaccination, she alleged that SCC "would not allow [her] to attend certain clinical courses." She also alleged that despite knowing

she was unvaccinated, SCC "placed [her] in rotations at medical centers that would not accept a medical exemption from Covid-19 vaccination requirements," while it at the same time placed "some of [her] peers in the same courses at medical centers that were willing to accommodate their desire to avoid Covid-19 vaccination."

Fischer alleged that in the spring of 2022, SCC assigned her to a clinical rotation at a medical facility that required proof of COVID-19 vaccination, but she convinced a fellow student to "switch with her" so that Fischer could complete the clinical rotation at "a facility accepting her vaccination status." In the summer of 2022, SCC assigned Fischer to complete a "perioperative observation requirement" at a facility that required proof of COVID-19 vaccination, so Fischer decided on her own to observe "at an alternative facility which accepted her unvaccinated status." Fischer alleged that SCC later determined she had not completed "a valid perioperative observation" and, in the fall of 2022, "removed" her from the nursing program.

### (b) Thomas' Allegations

Thomas alleged that in May 2024, he "completed the forms and steps" to apply for acceptance to the community college's paramedic certificate program, "except for completing the Covid-19 vaccine requirement." Thomas alleged that when he contacted SCC about the proof of vaccination requirement, he was informed that he "could apply for an exemption," but he did not "consider himself a good fit for either [SCC's] medical or religious exemption requirements," so he did not request either.

Thomas alleged that an unnamed official from the community college "made it clear" that compliance with the proof of vaccination policy, or a successful exemption, "was a prerequisite to acceptance into the Paramedic Program" and that SCC "never expressed a willingness to accept [Thomas'] application" without such documentation. Thomas alleged that he

nevertheless "asked [SCC] for a written acceptance or denial of his application" and that "[n]o response has been provided."

### (c) Various Claims and Requested Relief

Based on their factual allegations, the amended complaint presented four separate claims as described earlier, and prayed for the following relief:

• A finding that SCC "breached their contract with Fischer," violated the due process rights of both Fischer and Thomas under the state and federal constitutions, "acted negligently towards Plaintiffs and their peers," and "engaged in ultra vires acts which harmed Plaintiffs and their peers";

• Reimbursement for "mental anguish, pain and suffering, loss of educational opportunities, loss of earnings, and general damages";

• An injunction preventing SCC from "requiring Plaintiffs' peers" to produce proof of COVID-19 vaccination to apply to or attend SCC;

• An order directing SCC to "change Fischer's grade" and "exclude any clinical observation requirement";

• An order requiring SCC to allow Thomas to enter the paramedic certificate program "without demanding he show proof of Covid-19 vaccination"; and

• An award of interest, attorney fees, and costs.

### 3. Motion to Dismiss and Order

SCC moved to dismiss the amended complaint pursuant to § 6-1112(b)(1) and (6) and argued that granting further leave to amend would be futile. On November 13, 2024, after conducting a hearing and considering argument, the court entered a detailed 23-page judgment, styled as an order, granting the motion to dismiss with no further leave to amend.

The court's order analyzed each of the various theories of recovery or causes of action in the amended complaint. Regarding the claim for breach of implied contract, the court found that even after being allowed to amend, Fischer had failed to allege facts referencing the terms of any alleged

contract, express or implied, with SCC. More fundamentally, the court concluded that although the community college is a political subdivision of the State of Nebraska,[1] Fischer failed to cite any statute expressly authorizing her action for breach of implied contract against SCC and that, consequently, the claim was barred by sovereign immunity.

Regarding the due process and equal protection claims, the district court concluded the factual allegations of the operative complaint, even accepted as true, failed to state a claim upon which relief could be granted. The court found there were no factual allegations supporting the existence of a fundamental property or liberty right to a college education that would support a substantive due process claim. And it reasoned that even if Fischer and Thomas had been able to allege a protected interest in a postsecondary education, their factual allegations were nevertheless insufficient, as a matter of law, to state a claim that SCC had denied them procedural due process. As for the equal protection claim, the court concluded Fischer and Thomas were attempting to bring such claim as a "'class of one,'"[2] but they failed to allege facts sufficient to state such a claim.

Regarding the negligence claims, the court read the operative complaint to assert a negligence claim on behalf of Fischer but not Thomas. In any event, the court concluded that all negligence claims were premised on allegations that SCC breached a duty to advise students of the risks and benefits associated with taking or refusing the COVID-19 vaccine. The court reasoned that such claims were based entirely on allegations of misrepresentation, concealment, or deceit, and thus fell squarely within the exemption in the Political Subdivisions Tort Claims Act for "[a]ny claim arising out of

---

[1] See, Neb. Rev. Stat. § 13-1612 (Reissue 2022) (defining "[p]olitical subdivision" to include "community colleges"); *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

[2] See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

. . . misrepresentation [or] deceit"[3] and were barred by sovereign immunity. The court further reasoned that no "'semantic recasting'" of the allegations could avoid dismissal based on sovereign immunity.

Finally, regarding the "ultra vires" claims, the district court concluded that even accepting the factual allegations of the amended complaint as true, no cognizable claim was stated.

In summary, the court concluded it was appropriate to grant the motion to dismiss without leave to amend, reasoning that the "claims are barred by sovereign immunity and otherwise fail to state a claim for which relief can be granted [and] any further amendment is futile." The judgment of dismissal was entered November 13, 2024.

### 4. Postjudgment Motion and Order

Within 10 days after entry of judgment, Fischer and Thomas filed what they titled a "Motion for New Trial and Motion to Set Aside and Vacate Order." The motion expressly referenced, among other statutes, Neb. Rev. Stat. § 25-1329 (Reissue 2016), and the motion requested, among other things, the substantive relief of altering or amending the judgment. The motion also sought leave to amend the operative complaint to add allegations showing that Thomas had complied with the Political Subdivisions Tort Claims Act's presuit notice requirements.

At the hearing on the motion, Fischer and Thomas' counsel primarily argued for leave to amend the complaint, but when questioned about the other grounds asserted in the motion, counsel did not expressly abandon any ground. In an order entered January 27, 2025, the district court determined there were no sufficient grounds to alter or amend the judgment, and it overruled Fischer and Thomas' motion in its entirety.

---

[3] § 13-910(7). See *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017) (holding that misrepresentation exemption under State Tort Claims Act applies to claims of negligent misrepresentation, as well as willful misrepresentation).

Fischer and Thomas filed a notice of appeal on February 20, 2025. We moved the appeal to our docket on our own motion.

## II. ASSIGNMENT OF ERROR

Fischer and Thomas present a single assignment of error on appeal: "The district court erred in granting [SCC's] motion to dismiss." Because SCC contends this assignment is overly broad and fails to comply with Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014), we address, as a threshold matter, whether the assignment of error is sufficiently specific to preserve any alleged error for appellate review.

[1] In every appeal in Nebraska, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[4] Neb. Rev. Stat. § 25-1919 (Reissue 2016) has long required that "[t]he brief of appellant shall set out particularly each error asserted and intended to be urged for the reversal, vacation, or modification of the judgment, decree, or final order alleged to be erroneous." Relatedly, the Nebraska Court Rules of Appellate Practice require an appellant's brief to contain certain sections, under appropriate headings, including a section that contains a "separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."[5] These appellate briefing rules require that "[e]ach assignment of error shall be separately numbered and paragraphed"[6] and that "[c]onsideration of the case will be limited to errors assigned and discussed in the brief."[7]

[2,3] The purpose of requiring particularity in assignments of error is not to frustrate or impede appellate review but to facilitate it by preventing parties from shifting to appellate

---

[4] *State v. Lopez, ante* p. 118, 32 N.W.3d 868 (2026).

[5] § 2-109(D)(1)(e) (rev. 2025).

[6] *Id.*

[7] *Id.*

courts the critical tasks of searching the record for relevant facts, identifying possible trial error, and articulating a legal rationale that supports the assigned error.[8] Parties who wish to secure appellate review must abide by the rules of the Nebraska Supreme Court, and those who fail to comply with the appellate briefing rules do so at their own peril.[9]

[4] In this case, the operative complaint alleged multiple claims on behalf of multiple plaintiffs that were premised on different factual allegations, and the trial court dismissed those claims for a variety of different legal reasons. But on appeal, Fischer and Thomas present a single assignment of error that purports to broadly encompass all the trial court's rulings on the various claims without concisely or separately identifying any particular error allegedly made or the issues pertaining to such error. This type of generalized assignment attempts to cover everything but specifies nothing,[10] and it amounts to little more than a statement that the trial court erred because its rulings were erroneous. A generalized and vague assignment of error that does not advise an appellate court of the particular issues submitted for decision will not be considered.[11] The broad assignment here—that the district court erred by granting the motion to dismiss—is the type of

---

[8] See, *In re Estate of Meyers*, 320 Neb. 871, 31 N.W.3d 591 (2026); *White v. White*, 320 Neb. 256, 26 N.W.3d 924 (2025); *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

[9] *State ex rel. Hilgers v. Evnen*, 318 Neb. 803, 19 N.W.3d 244 (2025).

[10] See *State v. Kirby*, 276 N.C. 123, 131, 171 S.E.2d 416, 422 (1970) (observing overly broad assignment of error, "like a hoopskirt[,] covers everything and touches nothing").

[11] See, e.g., *State v. Taylor*, 310 Neb. 376, 381, 966 N.W.2d 510, 515 (2021) (finding assignment that "'district court erred by affirming [defendant's] conviction in county court of driving under the influence as a matter of law'" too generalized to be considered on appeal*)*; *Allsman v. Richmond*, 55 Neb. 540, 544, 75 N.W. 1094, 1095 (1898) (when motion for new trial alleged multiple grounds, assignment stating that trial court "'erred in overruling the motion for a new trial'" was "too indefinite to merit attention").

generalized assignment of error that an appellate court does not consider.[12]

[5] Fischer and Thomas do not dispute that their assignment of error is general, but they contend that the argument section of their brief is sufficiently specific to remedy the deficiency. We acknowledge that the argument section of Fischer and Thomas' brief contains 19 separate subheadings that discuss particular errors they contend were made by the trial court in ruling on the various claims. But as SCC correctly points out, Nebraska appellate courts have consistently followed the settled rule that headings in the argument section of an appellate brief will not substitute for the requirement of stating a separate, concise assignment of each error a party contends was made by the trial court.[13] That rule applies here.

[6] Depending on the particulars of each case, a party's failure to comply with the mandates of § 2-109(D)(1)(e) (rev. 2025) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.[14] In this appeal, we see no plausible basis to waive Fischer and Thomas' noncompliance with § 2-109(D)(1)(e) (rev. 2024), so the question is whether to proceed as though Fischer and Thomas failed to file a brief and provide no review at all or, alternatively, whether to examine the record for plain error. We exercise our discretion to review for plain error due to the briefing deficiency.

---

[12] See *id*.

[13] See, e.g., *State ex rel. Hilgers, supra* note 9; *County of Lancaster v. County of Custer*, 313 Neb. 622, 629, 985 N.W.2d 612, 619 (2023) ("[w]e have consistently rejected headings in the argument section as a sufficient substitute for assignments of error contained in the proper place and properly designated"); *Smallcomb v. Smallcomb*, 165 Neb. 191, 194, 84 N.W.2d 217, 219 (1957) (rejecting appellant's contention that "her assignments of error are contained in her argument" and holding that appellate courts "are not required to consider assignments of error made only by way of argument").

[14] See *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023).

## III. STANDARD OF REVIEW

[7] Plain error is error plainly evident from the record which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, or fairness of the judicial process.[15]

[8,9] When a jurisdictional question does not involve a factual dispute it presents a question of law.[16] An appellate court reviews questions of law independently of the lower court's conclusion.[17]

## IV. ANALYSIS

[10] Before we conduct our plain error review, we must address a threshold jurisdictional issue: whether this appeal was timely filed. When addressing this jurisdictional issue, we do not apply a plain error standard of review, because plain error review does not, and cannot, constrain an appellate court's duty to ensure that it has jurisdiction.[18] Therefore, even when circumstances may warrant plain error review of the merits, an appellate court will analyze its jurisdiction using the same standard of review ordinarily applied to jurisdictional issues.[19]

### 1. Jurisdiction

SCC argues we lack jurisdiction because the notice of appeal was untimely filed. In support, SCC points to the fact that the judgment of dismissal was entered November 13, 2024, and the notice of appeal was not filed until February 20, 2025.

---

[15] See, e.g., *Cramer v. Union Pacific RR. Co., ante* p. 246, 34 N.W.3d 70 (2026); *State v. Dale*, 320 Neb. 861, 31 N.W.3d 127 (2026).

[16] See *Martens v. BB's Childcare, ante* p. 335, 34 N.W.3d 393 (2026).

[17] *Id*.

[18] *State ex rel. Hilgers, supra* note 9.

[19] *Id.*

[11] Generally, appeals must be filed within 30 days after the entry of the judgment, decree, or final order.[20] However, that period may be terminated by filing a motion to alter or amend within 10 days of the judgment.[21] When such a motion is timely filed, a new period of 30 days for filing a notice of appeal commences when the terminating motion is ordered dismissed.[22]

Here, within 10 days after the judgment of dismissal was entered, Fischer and Thomas filed a motion asking the court to "alter and amend the Order of Dismissal under . . . § 25-1329 on the ground that the decision is contrary to law." Despite the substantive relief sought in the motion, SCC argues we should not treat this as a motion to alter or amend because, at the hearing on the motion, Fischer and Thomas focused primarily on other requested relief. We are unpersuaded.

[12,13] As a general rule, determining whether a motion seeks substantive alteration of a judgment is based on a review of the contents of the motion, not its title.[23] To qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment.[24] Fischer and Thomas' motion met these basic requirements. And although the motion to alter or amend was not vigorously argued at the hearing, we see nothing in the record suggesting the motion was abandoned, and the court expressly overruled the motion.

---

[20] *State v. Harris*, 307 Neb. 237, 948 N.W.2d 736 (2020). See Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 2024).

[21] *Harris, supra* note 20. See §§ 25-1329 and 25-1912(3). See, also, *State v. Hill*, 308 Neb. 511, 955 N.W.2d 303 (2021).

[22] See *Harris, supra* note 20. See, also, §§ 25-1329 and 25-1912(3).

[23] See *Hill, supra* note 21.

[24] *Id.* See, also, *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020); *Bryson L. v. Izabella L.*, 302 Neb. 145, 921 N.W.2d 829 (2019); *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018).

We therefore find the November 21, 2024, motion was a motion to alter or amend that terminated the time for filing an appeal, and the 30-day appeal period commenced on January 27, 2025, when the district court overruled that motion. Because Fischer and Thomas' February 20 notice of appeal was timely, we have jurisdiction over this appeal.

## 2. NO PLAIN ERROR

[14-16] When reviewing proceedings for plain error, appellate courts are neither constrained by the specific arguments raised in the briefs nor required to consider every error that may have occurred in the lower court.[25] Instead, as stated, when reviewing for plain error, an appellate court is concerned with error that is plainly evident from the record and is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[26] Courts should find plain error only in those rare instances where it is warranted, as opposed to invoking it routinely.[27] Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.[28]

Guided by these principles, we have carefully reviewed the appellate record, and we find no plain error in the trial court's judgment of dismissal as to any of the claims alleged in the amended complaint.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

[25] See *State ex rel. Hilgers, supra* note 9.

[26] See, *Cramer, supra* note 15; *Dale, supra* note 15.

[27] *State ex rel. Hilgers, supra* note 9.

[28] *Id.*